Dear Ms. Roper:
You have asked this office to render an opinion as to the application of La.Const. Art. X § 29.1 to the elected members of the Metropolitan Council (hereafter, "Metro Council"), the governing authority for the City of Baton Rouge and Parish of East Baton Rouge (hereafter, the "City-Parish"). The City-Parish operates pursuant to a home rule charter, known as the "Plan of Government".
La.Const. Art. X § 29.1 is a constitutional amendment which prohibits any member of a city council or city-parish council from participation in any public retirement system. Prior to the effective date of Art. X § 29.1, January 1, 1997, members of the Metro Council were permitted to participate in the City-Parish retirement system; however, the current members of the Metro Council, all elected for the first time after January 1, 1997, are not permitted membership in the City-Parish retirement system, because of this constitutional amendment.
You advance the argument that because Metro Council members work on a fulltime basis, and are compensated by a salary of $1,000.00 monthly, they should be considered as "full-time employees" entitled to participation in the City-Parish retirement system under the provisions of the Plan of Government. Further, even if the Metro Council members are not considered "full-time employees" under the existing Plan of Government or Code of Ordinances, your office proposes that the Metro Council is authorized to adopt an ordinance permitting the Metro Council members to participate in the City-Parish retirement system, because of the legislative powers afforded the City-Parish as a home rule charter government in existence prior to the adoption of the 1974 state constitution. *Page 2 
For the following reasons, explained below, we conclude that the current Metro Council members are prohibited by La.Const. Art. X § 29.1 from participation in the City-Parish retirement system. An ordinance adopted by the Metro Council permitting the council members to participate in the City-Parish retirement system would be unconstitutional and unenforceable.
I. The City-Parish Plan of Government.
The City-Parish operates pursuant under the provisions of a home rule charter, known as the "Plan of Government", enacted as authorized by the provisions of La.Const. Art. 14 § 3(a) of the Louisiana Constitution of 1921. Pursuant to this constitutional authority, the City of Baton Rouge and Parish of East Baton Rouge adopted a Plan of Government which became effective January 1, 1949. This Plan of Government was later ratified by the adoption of the 1974 state constitution by La.Const. Art. VI § 4.
Section 9.15 of Chapter 9 of the City-Parish Plan of Government is entitled "pensions" and authorizes the City-Parish to "establish . . . aretirement system for all permanent full-time employees of the parish,the city, and of those agencies and instrumentalities of the parish and city as may be designated by the council". Acting upon this authority, the City-Parish created the Employees' Retirement System of the City of Baton Rouge and Parish of East Baton Rouge by Ordinance No. 235 and Ordinance No. 276, effective December 31, 1953.
The current ordinances governing the City-Parish Employees' Retirement System, which further define membership and benefits, are found within Chapter 3, Part IV of the City-Parish Code of Ordinances. Section 1:251 of Part IV defines "member" of the retirement system to include "any person who is regularly employed by the employer", the employer being the consolidated government of the City of Baton Rouge and Parish of East Baton Rouge.
You propose that the Metro Council members should be considered "employees" in part because they are compensated by a salary of $1,000.00 monthly.[1] An analysis which characterizes the elected members of the Metro Council as persons who are "regularly employed" and thus entitled to be "members" under Section 1:251 of Part IV would require us to give no effect to that additional portion of Section 1:251 defining "members" to include "part-time council members under Section 1:266". *Page 3 
Section 1:266 provides:
 Part-time council members.
 A. Retirement allowances shall be provided for part-time metropolitan council members, or any predecessor council members, retroactive to December 31, 1976, in the following manner:
 1. Fifty (50) percent retirement allowance accrued after attaining eight (8) years of service and age fifty-five (55);
 2. Seventy-five (75) percent retirement allowance accrued after attaining twelve (12) years of service and age of fifty-five (55);
 3. Ninety (90) percent retirement allowance accrued after attaining sixteen (16) years of service and age of fifty-five (55).
 B. If a metropolitan council member becomes employed in a fulltime position eligible for membership under this part, he shall be eligible for the benefits provided under the pension plan for members who are not part-time council members, and shall no longer be eligible for the benefits provided for in subsection A of this section.
 C. Council members retain eligibility for all benefits provided under the pension plan for members who are not part-time council members if greater than those provided for in subsection A of this section.
 D. The retirement allowances provided for by this section shall not be applicable to any person who first serves as a part-time council member on or after January 1, 1997.
Subpart D of Section 1:266 excludes from benefits "any person who first serves as a part-time council member on or after January 1, 1997". Section 1:266 of Ordinance No. 10779 was enacted by the Metro Council on December 11, 1996, shortly after the congressional general election held on November 5, 1996 which approved La.Const. Art. X § 29.1. Your office advises that members of the Metro Council in office in 1996 enacted Section 1:266 to reflect the prohibition of La.Const. Art. X § 29.1. The current members of the Metro Council propose to adopt a new ordinance which would repeal the prohibition of Section 1:266 and instead permit the Metro Council members to participate in the City-Parish retirement system. *Page 4 
II. La.Const. Art. X § 29.1.
The constitutional amendment ultimately adopted as La.Const. Art. X § 29.1 was first proposed by Act 99 of the 1996 La. 1st Ex. Session, and was later approved by the electors at the congressional general election held on November 5, 1996, all in accordance with the procedures for amendments to the constitution as set forth in La.Const. Art. XIII § 1(A).[2]
La.Const. Art. X § 29.1 became part of the state constitution on January 1, 1997, pursuant to the terms of § 2 of Act 99. La.Const. Art. X § 29.1 provides, in its entirety:
 29.1 Part-time Public Officials
 (A) Except as provided in Paragraph (B), the following elected or appointed officials are hereby deemed to be part-time public servants who, based on such part-time service, shall not participate in, or receive credit for service in, any public retirement system, fund, or plan sponsored by the state of Louisiana or any instrumentality or political subdivision thereof:
 (1) Any legislator or any member of a school board, levee board, police jury, or parish council.
 (2) Any member of a city council, city-parish council, or town council or any alderman or any constable.
 (3) Any member of a board or commission established by the state of Louisiana or any instrumentality or political subdivision thereof unless authorized by law enacted by two-thirds of the elected members of each house.
 (4) Any person holding or serving in any other elected or appointed position or office defined to be part-time public service by law enacted by two-thirds of the elected members of each house.
 (B) The provisions of Paragraph (A) shall not apply to any person who is serving on January 1, 1997, in any elected or appointed *Page 5 
position set forth in Paragraph (A) and who is also a member on January 1, 1997 of a retirement system covering that position.
 (C) The provisions of this Section shall not apply to participation in the Louisiana Public Employees Deferred Compensation Plan, or its successor.
 (D) This Section shall become effective on January 1, 1997.
Article X § 29.1(A) states "the following elected or appointed officialsare hereby deemed to be part-time public servants" . . . who "based on such part-time service, shall not participate in . . . any public retirement system." This "part-time" status is imposed upon all elected members of a city-parish council, regardless of the actual number of hours worked by these elected officials.
III. A pre-1974 home rule charter government may not enact ordinancesinconsistent with the state constitution.
As noted above, the City-Parish is a home rule charter entity which came into existence prior to the adoption of the 1974 Louisiana constitution. All preexisting home rule charter governments are subject to the provisions of La.Const. Art. VI § 4, which provides the following:
Existing Home Rule Charters and Plans of Government
 Section 4. Every home rule charter or plan of government existing or adopted when this constitution is adopted shall remain in effect and may be amended, modified, or repealed as provided therein. Except as inconsistent with this constitution, each local governmental subdivision which has adopted such a home rule charter or plan of government shall retain the powers, functions, and duties in effect when this constitution is adopted. If its charter permits, each of them also shall have the right to powers and functions granted to other local governmental subdivisions.
Home rule charter entities adopted subsequent to the enactment of the 1974 Constitution are governed by the provisions of La.Const. Art. VI § 5(E), stating:
 (E) Structure and Organization; Powers; Functions. A home rule charter adopted under this Section shall provide the structure and organization, powers, and functions of the government of the local governmental subdivision, which may include the exercise of any power and performance of any function necessary, requisite, or *Page 6 
proper for the management of its affairs, not denied by general law or inconsistent with this constitution.
The powers granted to pre-1974 home rule charters are broader than those granted to home rule charters adopted subsequent to the 1974 Louisiana Constitution. "Consequently, a [pre-1974] home rule charter government possesses, in affairs of local concern, powers which within its jurisdiction are as broad as that of the state, except when limited by the constitution, laws permitted by the constitution, or its own home rule charter". See Francis v. Morial, 455 So.2d 1168 (La. 1984), at 1171; Merritt McDonald Construction, Inc. v. Parish of East BatonRouge, 98-1032 (La.App. 1 Cir. 5/14/99); 742 So.2d 564.
Examining the distinction between home rule charter governments adopted prior to and subsequent to the enactment of the 1974 Constitution, the Louisiana Supreme Court has stated:
 Accordingly, Article VI 4 limits a preexisting home rule charter's grant of initiation [of legislation] only by providing that the local government may not exercise that power inconsistently with the 1974 constitution. In contrast, a local governmental subdivision that acquires home rule powers subsequent to the adoption of the 1974 constitution is authorized to exercise such powers only when necessary, requisite, or proper for the management of its affairs. In this respect, therefore, a preexisting home rule charter or city parish potentially enjoys the power to initiate legislation to a greater degree than other local governmental subdivisions. See City of New Orleans vs. Board of Commissioners of the Orleans Levee District, 640 So.2d 237 (La. 1994); at page 244.
We acknowledge that the legislative authority afforded the City-Parish government, as a pre-1974 home rule charter entity, is considerable. However, the facts here do not present for discussion the authority of the Metro Council to enact an ordinance which is in conflict with a state statute; here we discuss the authority of the Metro Council to enact an ordinance which is in direct conflict with a provision of the state constitution. La.Const. Art. VI § 4 instructs that the Metro Council may not adopt an ordinance which is "inconsistent with this constitution", a limitation which is common to both the pre-1974 and post-1974 home rule charter entities. See La.Const. Art. VI § (5)(E).
La.Const. Art. X § 29.1 unequivocally provides that Metro Council members who are for the first time elected after January 1, 1997 are not entitled to participate in the City-Parish retirement system. An ordinance adopted by the Metro Council which includes the current elected members of the Metro Council as members in the City-Parish retirement system would be unconstitutional and unenforceable as inconsistent with La.Const. Art. X § 29.1 and La.Const. Art. VI § 4. *Page 7 
We note that La.Const. Art. X § 29(B) provides that "membership in any retirement system of the state or of a political subdivision thereof shall be a contractual relationship". Further, La.Const. Art. I § 23 prohibits the enactment of a law which impairs the obligation of contracts.
The facts here reflect that the current members of the Metro Council were all elected, for the first time, subsequent to January 1, 1997, the effective date of. La.Const. Art. X § 29.1. None of the current Metro Council members have been permitted to participate in the retirement system, which makes unnecessary any discussion involving the possible divesture of rights or impairment of contracts. Such contracts do not exist because the current members of the Metro Council have never been allowed membership in the City-Parish retirement system.
Note that La.Const. Art. X § 29.1 is inapplicable to thoseformer members of the Metro Council who were already members of the City-Parish retirement system on January 1, 1997. The legislature definitively expressed the prospective application intended for La.Const. Art. X § 29.1. Section 4 of Act 99 sets forth the language of the proposition which was submitted to the electors of the state as follows:
 Section 4. Be it further resolved that on the official ballot to be used at said election there shall be printed a proposition, upon which the electors of the state shall be permitted to vote FOR or AGAINST, to amend the Constitution of Louisiana, which proposition shall read as follows:
 To prohibit membership by legislators, members of school boards, levee boards, police juries, parish councils, city councils, city-parish councils, town councils, aldermen, constables, and members of boards or commissions established by the state or any instrumentality or political subdivision who are elected or appointed after January 1, 1997, from participating in any public retirement system sponsored by the state of Louisiana or any instrumentality or political subdivision thereof and to authorize the inclusion of certain positions and offices in the prohibition by a two-thirds vote of the legislature.
Section 4 states the prohibition is applicable to those elected members of a city-parish council who are elected or appointed after January 1,1997, which reflects the legislature's intention that the Act apply prospectively. This interpretation is further supported by the express language of Art. X § 29.1(B), which provides that the prohibition "shall not apply to any person who is serving on January 1, 1997, in any elected or appointed position set forth in Paragraph (A) and who is also a member on January 1, 1997 of a retirement system covering that position". *Page 8 
It is the opinion of this office that the current Metro Council members are prohibited by La.Const. Art. X § 29.1 from participation in the City-Parish retirement system. An ordinance adopted by the Metro Council permitting the council members to participate in the City-Parish retirement system would be unconstitutional and unenforceable.
We hope the foregoing is helpful to you. Should you have other questions in which we may provide assistance, please contact this office.
 Very truly yours,
 JAMES D. "BUDDY" CALDWELL ATTORNERY GENERAL
 BY: __________________________ KERRY L. KILPATRlCK ASSISTANT ATTORNEY GENERAL
 KLK:arg
[1] Section 2.05 of Chapter 2 of the Plan of Government provides that "the salary of each councilman shall be $1,000.00 per month effective January 1, 2009. Except for travel allowances authorized by law, the members of the Metropolitan Council shall receive no other compensation".
[2] La.Const. Art. XIII § 1(A) provides for the procedures for amendments to the state constitution. Art. XIII § 1(A) requires that constitutional amendments be proposed by joint resolution of the legislature and also be submitted for approval of the voters at a statewide election. Art. XIII § 1(C) requires a majority of the electors voting on the proposed amendment to approve the proposed amendment. Upon such approval "the governor shall proclaim its adoption, and [the amendment] shall become part of this constitution, effective twenty days after the proclamation, unless the amendment provides otherwise." See Art. XIII § 1(C).